UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
AMANDA ALLADIN,

          Plaintiff,

vs.

PRACTICE MANAGEMENT OF AMERICA,

          Defendant.
---------------------------------------------------------------X

Civil Action No.

__ cv_____(___)(___)

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Amanda Alladin, through her attorneys of record, for her Complaint against Practice Management of America ("Defendant" or "PMA"), alleges based upon personal knowledge, relevant documents, and information and belief, as follows:

**I.**     **NATURE OF THE ACTION**

1. This is an action to recover damages for the retaliation Plaintiff suffered as a consequence of her engagement in protected conduct the Federal False Claims Act, 31 U.S.C. §§ 3729, *et seq,* New York False Claims Act, N.Y. Finance Law §§ 187 *et seq.*

2. As set forth in detail below, the Defendant knowingly engaged in fraudulent schemes designed to manipulate, misappropriate and enhance the reimbursement proceeds received from the Medicaid program. When Plaintiff objected to the conduct she was retaliated against which included, but was not limited to, her termination.

3. The fraudulent scheme was that defendant charged Medicaid and Medicare program for medical services never provided and further falsified records that were then submitted to the government to conceal the fraudulent scheme.

4. Plaintiff was summarily terminated in retaliation for her refusal to participate in the falsification of medical records and her general opposition to Defendant's fraudulent practices.

## II. PARTIES

5. Plaintiff ("Alladin" or "plaintiff"), was formerly employed in the position of Practice Administrator by PMA.

6. PMA is the former employer of plaintiff and a recipient of Medicaid funding.

## III. JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. Under 31 U.S.C. § 3730(e), there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint. Plaintiff is the original source of the facts and information alleged in this Complaint.

8. This Court has personal jurisdiction over the Defendant pursuant to 31 U.S.C. § 3732(a) because that section authorizes nationwide service of process and because the Defendant has minimum contacts with the United States. Moreover, the Defendant can be found in this District and transact business in this District.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1395(a) and 31 U.S.C. § 3732(a) because the Defendant can be found in and transacts business in this District. At all times relevant to this Complaint, Defendant regularly conducted substantial business within this District, maintained employees in this District, and/or sold significant

services within this District. In addition, statutory violations, as alleged herein, occurred in this District.

## BACKGROUND FACTS

### I.

### MS. ALLADIN'S PMA EMPLOYMENT

10. On June 15, 2020, Ms. Alladin joined PMA.

11. During the entire tenure of her employment, her work product and conduct was never criticized.

12. At all times, she performed her duties professional obligations with diligence and skill.

13. Her excellence in her job performance was acknowledged in writing by her supervisors.

14. She was terminated only when she raised concerns about fraudulent billing practices and requested reasonable accommodations for her health issues and for those of her child.

### II.

### PMA'S ILLEGAL BILLING PRACTICES AND PLAINTIFF'S OBJECTIONS

15. PMA has billed incorrectly for Covid Swabbing- CPT codes billed 99212, 99211-established visit, 36415-venipunture.

16. The patients are not having blood drawn nor seeing a Physician before getting their Covid Test. The patients are from The Northshore Surgi Center / Dr. Lazar who are being sent over to PMA to be swabbed.

17. This is a separate TAX ID # used to be billed for the testing. The billing was being done through Dr. John Zaso and Dr. Roberta A. Bianco.

18. Salus is the billing company and is being managed through PMA. Dr. Roberta A. Bianco and Dr. John Zaso is also being managed through PMA. The billing for the Covid test should only be for a Specimen Collection and Swabbing.

19. There are no chart documentations and signatures on the visit that the patients are being seen by a healthcare provider for the test. This test is being done only by a medical assistant.

20. This fraud was discovered on October 28, 2020 by a billing supervisor Janet Ferris who brought it to Ms. Alladin's attention.

21. Ms. Ferris was terminated on November 4, 2020.

22. The reason for her termination was not explained to Ms. Alladin which made no sense since she was her supervisor.

23. Ms. Ferris is a certified coder unlike the billing manager is not a coder.

24. On October 28, 2020 Ms. Alladin communicated to Marissa Guarino, Vice-President, concerning the billing fraud. Ms. Alladin stated to her that she needed to speak to the billing manager to find out why she was fraudulently billing the CPT codes and she responded "I am sure that Melissa Moscol, the billing manager, knows what she is doing".

### III.

### PMA REFUSES TO ACCOMODATE MS. ALLADIN'S MEDICAL CONDITION

25. Ms. Alladin suffers from Hypothyroidism, Hypertension and Hypertriglyceridemia. Stress exacerbates her health issues. PMA was fully aware of her illness.

26. On December 13, 2020 Ms. Alladin sent a correspondence to Ms. Guarino seeking a transfer in order to accommodate her medical condition. Ms. Guarino acknowledged the request several times via email, phone conversation and text and advised that a transfer was available and will be completed as soon as a replacement is found.

27. On December 28, 2020 Ms. Alladin was advised by Ms. Guarino that a new manager was commencing employment beginning the week of January 4, 2021. Further, Ms. Guarino stated that Ms. Alladin should connect with the new practice administrator, Debbie Zaso, who took over her position in order to transition both the Practice Administrator and Office Manager job duties which she agreed to do prior sending over the Request to Transfer.

28. On December 29, 2020 Ms. Guarino emailed Ms. Alladin stating that she will discuss Ms. Alladin's new role on January 4, 2021. On January 4, 2021 Ms. Alladin received a text that Ms. Guarino was out of pocket and won't be able to connect with her.

29. Around 6:30am on January 4, 2021 Ms. Alladin sent a text message to both Ms. Guarino and Debbie Zaso to advise that her baby was running a 101 temperature since January 2, 2021 and that she will need to leave work once she scheduled a doctor's appointment.

30. Despite her child's illness, Ms. Alladin went to work. At work Ms. Alladin was advised that she was required to cover at CovidGuardians due to shortage of staff. Ms. Alladin advised Debbie Zaso that she did not want to expose herself, and in turn, potentially expose her sick child to Covid.

31. Debbie Zaso's response to Ms. Alladin, before the entire staff, was that PMA was a medical office. On 1/4/21, left with no choice, Ms. Alladin worked in CovidGuardians for the first 45 minutes until management identified a medical assistant to take over.

32. That same day, Ms. Alladin received a doctor's appointment for her child for 11:45am. Ms. Alladin attempted to schedule an appointment later in the day that would be least disruptive to her work schedule but was not successful. At 10:58 that morning she texted Debbie Zaso to let her know that she was leaving work to take her child to the doctor. Ms. Alladin received no response from her.

33. The doctor tested her child for Covid as a precaution. Ms. Alladin inquired to Debbie Zaso if she could take the Rapid and PCR at PMA Clinic since PMA had been testing employees' families. Debbie Zaso stated that she would get back to her.

34. When she did communicate to her she advised Ms. Alladin that the PCR test was sufficient which she had already received at the pediatrician's office.

35. The same day Ms. Alladin received a call from Debbie Zaso stating that Ms. Alladin was required to quarantine until she received her child's test results back and it is negative.

## IV.

## MS. ALLADIN WAS ILLEGALLY TERMINATED

36. On January 4, 2021 Ms. Alladin received an email that stated, despite previous representations that she would be transferred, due to changes in the organizational structure, no positions were available.

37. Further, instead of being permitted to remain in her current role until January 15, 2021, Ms. Alladin's termination was immediate.

38. Finally, Ms. Alladin was repeatedly harassed following her transfer request which was acknowledged by Suzanne McCarthy, PMA's HR Rep.

39. PMA's refusal to honor its agreement to transfer Ms. Alladin, and instead terminate her, was retaliation for her objections to PMA's illegal billing practices and her insistence that her health condition, along with her child's health condition, be reasonably accommodated which PMA refused to do.

40. Defendant acted in reckless disregard for Plaintiff's Civil Rights.

## COUNT I

### (Federal False Claims Act – Retaliation Violation)

### 31 U.S.C. § 3730(h)

41. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 40 above as though fully set forth herein.

42. Defendant had a duty under the False Claims Act, 31 U.S.C. § 3730(h), to refrain from taking discriminatory or retaliatory actions against employees who take lawful actions in furtherance of a False Claims Act action, or who make lawful efforts to stop others from violating the False Claims Act. Such discriminatory and retaliatory action includes, but is not limited to, discharging, demoting, suspending threatening or harassing an employee for engaging in such protected conduct.

43. As set forth above, Plaintiff engaged in numerous activities that are protected under the False Claims Act. This included objecting to Defendant's fraudulent billing practices.

44. The Defendant – including senior executives and compliance personnel working at the various Defendant entities -- were well aware that Plaintiff had engaged in these protected activities, and it discriminated and retaliated against Plaintiff for engaging in such protected conduct by harassing her and terminating employment.

45. The Defendant's actions damaged and continue to damage Plaintiff in violation of 31 U.S.C. § 3730(h).  As a direct and proximate result of the foregoing, Plaintiff has lost the benefits and privileges of employment and have suffered additional economic and non-economic damages, including severe emotional anguish and irreparable, continuing to harm their career. In connection with this claim, Plaintiff seeks all damages and other appropriate relief authorized by the False Claims Act, as well as litigation costs and reasonable attorneys' fees.

## COUNT II

### (New York False Claims Act – Retaliation Violation)

### N.Y. Finance Law § 191

46. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 45 above as though fully set forth herein.

47. Defendant had a duty under the New York False Claims Act, N.Y. Finance Law § 191, to refrain from taking discriminatory or retaliatory actions against employees who take lawful actions in furtherance of a False Claims Act action, or who make lawful efforts to stop others from violating the False Claims Act.   Such discriminatory and retaliatory action includes, but is not limited to, discharging, demoting, suspending threatening or harassing an employee for engaging in such protected conduct.

48. As set forth above, Plaintiff engaged in numerous activities that are protected under the New York False Claims Act. This included objecting to Defendant's fraudulent billing practices.

49. The Defendant – including senior executives and compliance personnel working at the various Defendant entities -- were well aware that Plaintiff engaged in these protected

activities, and it discriminated and retaliated against the Plaintiff for engaging in such protected conduct by terminating their employment.

50. The Defendant's actions damaged and continue to damage Plaintiff in violation of N.Y. Finance Law § 191.  As a direct and proximate result of the foregoing, Plaintiff has lost the benefits and privileges of employment and have suffered additional economic and non-economic damages, including severe emotional anguish and irreparable, continuing to harm their careers.  In connection with this claim, Plaintiff seeks all damages and other appropriate relief authorized by the False Claims Act, as well as litigation costs and reasonable attorneys' fees.

## COUNT III

### [Executive Law 296 Claim-Failure to Accommodate]

51. Plaintiff repeats and reallege each and every allegation contained in paragraphs 1 through 50 above as though fully set forth herein.

52. Defendant failed to reasonably accommodate Plaintiff after learning of Plaintiff's medical condition and that of her child by refusing to transfer Plaintiff to a safer position when such alternative position was readily available and plaintiff was more than qualified for the post.

53. The Defendant's actions damaged and continue to damage Plaintiff in violation of Executive Law 296.  As a direct and proximate result of the foregoing, Plaintiff has lost the benefits and privileges of employment and have suffered additional economic and non-economic damages, including severe emotional anguish and irreparable, continuing to harm their careers.  In connection with this claim, Plaintiff seeks all damages and other appropriate relief authorized by Executive Law 296, as well as litigation costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands and prays that judgment be entered against Defendant under the Federal False Claims Act as follows:

(1)   On Cause of Action I compensatory and punitive damages in an amount to be determined at trial;

(2)   On Cause of Action II compensatory and punitive damages in an amount to be determined at trial;

(3)   On Cause of Action III compensatory damages in an amount to be determined at trial;

(4)   Attorney's fees and costs; and

(5)   For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

Dated: New York, New York
       March 5, 2021

                                        **KAISER SAURBORN & MAIR, P.C**.

                                        By: _____
                                            Daniel J. Kaiser, Esq.
                                            William H. Kaiser

                                            30 Broad Street, 37th Floor
                                            New York, New York 10004
                                            Tel: (212) 338-9100
                                            *Attorneys for Plaintiffs*